UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ANNIE ZHAO, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>CIEE, INC., COUNCIL ON INTERNATIONALEDUCATIONAL EXCHANGE, INC.,<br><br>               Defendants. | Case No. 2:20-cv-00240-LEW |

## **ORDER ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff Annie Zhao originally filed this action on June 11, 2020 in Maine Superior Court in Cumberland County, alleging Defendants CIEE Inc. and the Council on International Education Exchange, Inc. (collectively "CIEE") had breached their contracts with her and similarly-situated participants in Defendants' Spring 2020 study abroad programs, or, alternatively, that Defendants were unjustly enriched as a matter of Maine state law.  On July 6, 2020 Defendants timely removed the case to this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.  Defendants then filed a Motion to Dismiss for Failure to State a Claim, which is now before me (ECF No. 3).  For the reasons that follow, Defendants' Motion is GRANTED.

### BACKGROUND

Like many rising college juniors before her, Plaintiff Annie Zhao contracted with CIEE to attend a study abroad program "because of the opportunity to live and study abroad

in Europe and to interact in-person with other cultures, faculty, and peers." Complaint ¶ 7. Plaintiff's study abroad program at the University of Amsterdam in the Netherlands, and most of CIEE's other Spring 2020 programs, began in late January. *Id.* ¶ 6. This year's spring semester in Amsterdam ended early, however, as CIEE "suspended the on-site portions of it study-abroad programs on March 15, 2020." *Id*. ¶ 60. CIEE did so as the threat from COVID-19 became clear. *Id.*

On March 11, 2020, the World Health Organization declared the novel coronavirus a pandemic and the United States Centers for Disease Control and Prevention ("CDC") issued a Level 3 Travel Warning for Europe, a Level 2 Travel Warning for the world, and the United States Department of State issued a Level 3 global travel advisory. *Id.* ¶ 55-56. The next day, on March 12, 2020, CIEE alerted Ms. Zhao and its other students that it planned to suspend the "abroad" part of its study abroad programs. *Id.* ¶ 57. On the 13th, the President of the United States declared the novel coronavirus pandemic a national emergency. *Id*. ¶ 59. CIEE formally suspended the on-site portions of it study-abroad programs two days later on March 15. *Id.* ¶ 60. In his message to students, CIEE President and CEO James P. Pellow stated that the "expanding global disruption caused by the spread of COVID-19" precipitated CIEE's decision that "study abroad programs will be suspended […]." *Id*. Given the public health crisis caused by COVID-19, both parties believe this was the right choice. *Id*. ¶ 1 ("CIEE undeniably made the right decision […].").

This dispute arises from what happened after CIEE told its students to return home from their semesters abroad. After ending abroad aspects of its programs in mid-March, CIEE transitioned Plaintiff's program—and those of other putative class members—into

online and distance learning classes. *Id*. ¶¶ 65, 67. It did so to ensure students could "earn their originally anticipated academic credits." *Id*. ¶ 65.

Plaintiff alleges that CIEE's suspension of its study abroad programs breached its contractual obligations to her and putative class members, who "entered into the same or substantially similar, binding contracts with [CIEE]." *Id*. ¶¶ 85C, 92-93, 95-98. This contract was the CIEE Program Participant Contract and Forum and Methodology for Dispute Resolution Agreement ("Participant Contract"). *Id*. ¶¶ 5, 15. The Participant Contract also had a "Terms and Conditions" section, which applied to CIEE's Spring 2020 programs and "supersede[d] any other published policies pertaining to these terms." *Id*. They also provided that "in the case of conflict among [CIEE or the student's home institution's other policies], the [Participant Contract], inclusive of these Terms & Conditions, first applies." *Id*.

The Parties dispute the meaning of several terms in the Participant Contract and Terms & Conditions and whether they apply to the situation at hand—the early closure of CIEE's study-abroad programs' "on-site aspects" in the wake of COVID-19. In an effort to recoup some of what she paid, Plaintiff points to paragraph 14 of the Participant Contract which reads: "All CIEE programs are based on group arrangements involving a minimum number of participants. In the unlikely event that a program is cancelled (due to low enrollment or any other reason), CIEE will refund all payments received but will have no further liability to participant." *Id.* Defendants counter that paragraph 14 does not entitle Plaintiff to any refund, and that several other provisions of the Participant Contract—

paragraphs 10, 18, 19, and 23—and the contract's Terms & Conditions section absolves them of any obligation to pay refunds to this Plaintiff or any of the putative class members.

## DISCUSSION

Defendants move to dismiss Plaintiff's case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter...to state a claim to relief that is plausible on its face." *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Rule 12(b)(6) analysis has two steps. First, I "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id*. Then, I determine whether "the well-pleaded facts, taken in their entirety, permit the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Put another way, "an unadorned, the defendant-unlawfully-harmed-me accusation" is not enough. *Id*.

### A. BREACH OF CONTRACT

Under Maine law,[1] "the elements of breach of contract are: (1) breach of a material contract term; (2) causation; and (3) damages." *Brower v. ADT LLC,* 2016 WL 4919884, at *10 (D. Me. Sept. 14, 2016) (quoting *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. Defendants move to dismiss Count One

---

[1] The parties agree that Maine law applies to the Participant Contract and its Terms & Conditions. Motion to Dismiss at 7; Opposition at 8; Participant Contract ¶ 33.

of Plaintiff's Complaint because they believe the language of the Terms & Conditions and Participant Contract demonstrate CIEE has not breached a material term. CIEE suggests that its obligation to make students whole for the difference in value between what they were promised and what they received is limited by language in its Terms & Conditions requiring that CIEE make "reasonable efforts" to make "alternative arrangements" in the event of an emergency requiring cancellation of its programs. Motion to Dismiss at 8–9. Defendants also argue that Plaintiff's interpretation of paragraph 14—allegedly promising a refund in the event of a program's cancellation—is not what Plaintiff says it is. Rather, Defendants argue that when reading the Participant Contract as a whole, specifically in the context of paragraphs 10, 18, 19, and 23, they have complied with all relevant obligations.

### 1. Material Breach

On review, I find the Complaint fails to plausibly allege that CIEE materially breached its obligations in paragraph 14 when it canceled abroad aspects of its Spring 2020 study abroad programs without issuing students a refund. Plaintiff's contract claim rises and falls on an interpretation of the refund provision in paragraph 14—a provision she believes requires CIEE to issue a full refund, or at least is ambiguous, which would require resolving the question of whether a refund is due in her favor. Maine law instructs that "determining whether or not a contract is ambiguous is a question of law," and if "a contract is unambiguous, its interpretation is also a question of law." *See Brower*, 2016 WL 4919884 at *8. Plaintiffs' Complaint calls on me to analyze several contractual terms, which I find to be unambiguous given the context and structure of the instrument as a whole, and I therefore interpret the contract as required by Maine law.

To begin with, I must decide what paragraph 14 means—whether it applies to Plaintiff's upended Spring semester, and whether CIEE has breached its terms by sending its students home this March without refunds. Paragraph 14 is a cancellation provision. Its first sentence acknowledges that many CIEE programs depend on group enrollment numbers. Participant Contract ¶ 14, ECF No. 3-3 at 5. Then, it promises to refund all payments if a program is canceled "due to low enrollment or any other reason," but that it will have no further liability to participant. *Id.* Plaintiff alleges that Defendants breached the Participant Contract because "CIEE's no-refund policy for its cancelled Spring 2020 programs […] breaches [paragraph 14] of its contract with participants," and that "CIEE's offer to substitute online classes […] was not agreed to in any contract with program participants." Complaint, ¶¶ 72, 99. Read in isolation, Paragraph 14 might well mean that participants get a full refund whenever a program is canceled, and for whatever reason. But because this is not a one-paragraph contract, I do not stop my analysis there. As discussed in more detail below, both the Participant Contract's Terms & Conditions section and several nearby paragraphs limit the potentially globetrotting sweep of paragraph 14, and mean Defendants did not breach its terms.

Most helpful is the Contract's Terms & Conditions section,[2] which limits the scope of paragraph 14. Maine law requires me first to construe a contract "to give force and effect to all of its provisions," *Acadia Ins. Co. v. Buck Const. Co.*, 2000 ME 154, 756 A.2

---

[2] Maine law generally recognizes that Terms & Conditions addendums and the contracts they modify are parts of the same agreement: "[I]n the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same contracting parties, for the same purposes, and in the course of the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." *Crowe v. Bolduc*, 334 F.3d 124 (1st Cir. 2003) (citations omitted) (applying Maine law).

515 (citation omitted), but also that "specific terms and exact terms are given greater weight than general language." *Dow v. Billing*, 2020 ME 10, ¶ 21, 224 A.3d 244, 250–251 (citing Restatement (Second) of Contracts § 203(c) (Am. Law. Inst. 1981)).  The language Plaintiff relies on from paragraph 14 is decidedly general—that CIEE will offer refunds when its programs are cancelled for "any other reason" than low enrollment.  Plaintiff's interpretation is hard to square with the much more specific language in the Terms & Conditions dealing with the exact same subject matter, but using more specific language.  Page 9 of the Terms & Conditions has a section titled "Program Cancellation."  ECF No. 3-2 at 9.  That section repeats paragraph 14's language exactly for programs that are cancelled "prior to the start," and extends its discussion of refunds to those programs canceled "following the program start date and prior to the end of an academic term," like Plaintiff's.  The Terms & Conditions does not promise refunds in these instances, but only that "CIEE will make reasonable efforts to make alternative arrangements in order to allow students to complete their academic work."  ECF No. 3-2 at 9.  I, therefore, give the far more explicit and deliberate language of the Terms & Conditions more weight; the plausible reading of this limiting language is that it clarifies the earlier, general language in paragraph 14, limiting the promise of a full refund to those circumstances when a program is canceled before it begins.

Although the limiting language in Participant Contract's Terms & Conditions forecloses Plaintiff's interpretation of paragraph 14 by itself, nearby paragraphs in the Contract also stand in Plaintiff's way.  For example, paragraph 18 provides: "[w]ithout limitation, CIEE is not responsible for any injury, loss, or damage to person or property,

7

death, delay, or inconvenience in connection with the provision of any goods or services occasioned by or resulting from, but not limited to, acts of God, force majeure, acts of government […] **epidemics or the threat thereof**, [and] disease […]." Cronin Dec. Ex. B ¶ 18 (emphasis added).  Even if Plaintiff's interpretation of paragraph 14 were correct, CIEE is not responsible for loss "resulting from…epidemics" like the novel coronavirus that caused her spring program in Amsterdam to end early.  Paragraph 18's very clear limitation-of-liability clause, therefore, means Plaintiff cannot bring a claim under paragraph 14 when the loss is due to an epidemic, as she alleges in her Complaint.

Paragraph 19 also closes off Plaintiff's refund-no-matter-what interpretation of paragraph 14.  Paragraph 19 provides that Plaintiff agreed to "assume all risk of any such problems which could result from," "perceived or actual epidemics (such as, but not limited to, H1N1, Ebola, SARS, bird flu, or Zika)" which could "delay, disrupt, interrupt or cancel programs."  *Id.* ¶ 19.  Again, this paragraph applies to an "actual epidemic" like the novel coronavirus.  And again, it stands in the way of Plaintiff's interpretation of paragraph 14.  Even if paragraph 14 entitled Plaintiff to a full refund for a program canceled during an epidemic—and given the specific language in the Terms & Conditions it does not—by agreeing to paragraph 19 she gave away a breach-of-contract claim for lost value in her canceled semester.  Paragraph 19 also independently, and when read together with paragraph 18, forecloses Plaintiff's breach-of-contract claim.

Because the Participant Contract's Terms & Conditions limit the scope of paragraph 14, and because paragraphs 18 and 19 further limit CIEE's contractual obligations, I find Defendants have not breached a material term, and that Plaintiff has therefore failed to state

a breach of contract claim upon which relief may be granted. Defendants' Motion to Dismiss Count One is GRANTED.

### B. UNJUST ENRICHMENT

I will also grant Defendants' Motion to Dismiss Count II, Plaintiff's unjust enrichment claim. Unjust enrichment is a theory of equitable recovery for the value of a benefit retained and is only available in the absence of an express contract. *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269. The Law Court has explained that an unjust enrichment claim "presupposes the absence of a contractual relationship between the parties." *York Cty. v. Property Info Corp., Inc.*, 2019 ME 12, ¶ 26, 200 A.3d 803. Plaintiff concedes the existence of a contract governing the parties' relationship in her Complaint, and the parties agree that this case revolves around the Participant Contract, and whether Defendants breached the terms of paragraph 14. *See* Compl. ¶¶ 69-71, 72, 79, 85C, 92-93, 95-98. The existence of the parties' contract therefore precludes recovery for unjust enrichment under Maine law, and I will dismiss Plaintiff's unjust enrichment claim as well.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 3) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

**SO ORDERED.**

Dated this 31st day of August, 2020.

                                            /s/ Lance E. Walker
                                          UNITED STATES DISTRICT JUDGE